IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **FRANCISCO NIEVES REYES,**<br><br>Plaintiff,<br><br>v.<br><br>**CVS PHARMACY, INC.; CAREMARK RX LLC; AND DOES 1 THROUGH 10,**<br><br>Defendants. | 1:14-cv-00964 MJS<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>**[Doc. 5]** |

This matter is before the court on plaintiff Francisco Nieves Reyes' motion to remand this case to the Stanislaus County Superior Court. (Pl.'s Mot. Remand, ECF No. 5.) Defendants CVS Pharmacy, Inc. and CVS Caremark Corporation[1] ("Defendants") oppose the motion. (Opp'n, ECF No. 14.) Also before the court is Plaintiff's request for costs and attorney fees. (ECF No. 5.)

Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 13, 15.)

---

[1] Erroneously sued as Caremark Rx L.L.C.

1

After considering the moving papers, this Court determined the issues presented were suitable for decision without oral argument pursuant to Local Rule 230(g), and it took the matter under submission. (ECF No. 21.)

For the reasons set forth below, the Court denies Plaintiff's motion to remand and his request for costs and attorney fees.

I. **INTRODUCTION AND PROCEDURAL BACKGROUND**

On January 30, 2013, Plaintiffs initiated this class action in Stanislaus County Superior Court (Case number 680978). Plaintiff, Francisco Nieves Reyes individually, and on behalf of others similarly situated (collectively "Plaintiffs"), allege four state law causes of action, including: 1) forfeiture of vacation, 2) unfair competition, 3) failure to pay all wages owed upon termination, and 4) failure to pay final wages timely on termination. (See Compl., Lam Decl., Ex. 3, ECF No. 1-2.)

Plaintiffs are former California CVS Pharmacy Inc. and CVS Caremark Corporation employees who accrued vacation benefits during their employment with Defendants and whose employment terminated within four years of the filing of the lawsuit. (See Compl., ¶ 11.) Plaintiffs' causes of action involve claims of forfeiture of vacation in violation of California Labor Code Section 227.3 and failure to pay unused floating holiday benefits timely upon termination in violation of California Labor Code Sections 201 or 202. Plaintiffs plead no federal causes of action.

This is the second time the case has been removed to federal court. On March 21, 2013, Defendants removed the case claiming that the allegations in Plaintiffs' complaint brought it within Section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)) ("LMRA") and therefore raised federal questions subject to this Court's jurisdiction. (See E.D.Cal. Case No. 1:13-cv-00420-AWI-GSA.) On April 19, 2013, Plaintiffs filed a motion for remand, which the Honorable Gary S. Austin, U.S Magistrate Judge, granted on February 12, 2014. The Court found that resolution of the state law claims would not necessarily require interpretation of provisions of the collective bargaining agreement and, thus, that Defendants failed to show that the case fell within

the parameters of the LMRA.

Four months later, on June 19, 2014, Defendants again removed the case to this Court. (See ECF No. 1.) Defendants assert that removal now is proper under the Class Action Fairness Act of 2005 ("CAFA") as the number of proposed class members exceeds 100 and the amount in controversy exceeds $5,000,000. Pending before the Court is Plaintiffs' June 27, 2014 Motion to Remand. (ECF No. 5.) Plaintiffs contend that Defendants' removal based on CAFA is untimely as the plain language of the original complaint put Defendants on notice that CAFA jurisdiction existed. Defendants filed an opposition to the motion on July 18, 2014, and Plaintiffs filed a reply on July 21, 2014. (ECF Nos. 14, 16.) On July 23, 2014, Defendants filed a motion to file a sur-reply, and on July 24, Plaintiffs filed an opposition to that motion.[2] (ECF Nos. 19-20.)

## II.     LEGAL STANDARD

The removal statute provides: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by a defendant to a federal district court. 28 U.S.C. § 1441(a). CAFA vests federal courts with original jurisdiction over civil cases where: (1) the amount in controversy exceeds the sum of $5 million, exclusive of interest and costs; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) there is minimal diversity. 28 U.S.C. § 1332(d)(2), (d)(5)(B). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006). Moreover, because federal courts "construe the removal statute against removal jurisdiction," "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Accordingly, "the court resolves all ambiguity in favor of remand to state court." Hunter v. Phillip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009).

---

[2] The Court DENIES Defendants' motion to file a sur-reply. The Court finds that further arguments will not assist the Court in determining the present matter.

Here, the parties do not dispute that the numerosity, amount in controversy, and minimal diversity requirements under CAFA are met. Hence, the only issue before the Court is whether the removal was timely.

### III. DISCUSSION

Plaintiffs argue the case must be remanded because Defendants waived the right to remove it by not exercising that right within thirty days of being put on notice of the potential number of plaintiffs. (ECF 6 at 1.) Defendants contend that they could not have ascertained the number of potential defendants earlier. (Id. at 3-5.)

#### A. The Opposing Arguments

More specifically, Plaintiffs argue that Defendants were able to determine the number of class members from the information contained in the complaint, and therefore under 28 U.S.C. § 1446(b)(1), were required to remove the matter within thirty days of service of the complaint. The complaint set forth that the alleged class consisted of all former California CVS Pharmacy Inc. and CVS Caremark Corporation employees who accrued vacation benefits and were terminated during the relevant period. (ECF No. 6 at 4.)

Defendants present three arguments in opposition. First they argue that Plaintiff erroneously named a non-existent entity, Caremark Rx L.L.C. (rather than CVS Caremark Corporation), preventing Defendants from determining that Plaintiff intended to name CVS Caremark Corporation's employees. (ECF No. 14.) Second, Defendants assert that since Reyes, the named plaintiff, was a distribution center employee, they understood the purported class was limited to distribution center workers. (Id.) Finally, Defendants' assert that they had no duty to determine from the evidence presented whether CAFA jurisdiction was met.

#### B. Timeliness of Removal -- Applicable Law

The removal procedure is governed by 28 U.S.C. § 1446. Subsection (a) provides the notice of removal must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The timeliness of removal is governed by subsection (b).

Subsection (b) identifies two thirty-day periods for removing a case. 28 U.S.C. § 1446(b).

To trigger the first thirty-day period, the facts supporting removal must appear on the face of the complaint. Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). That is, removability must be evident from the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." Id. If grounds for removal are not clear from an initial pleading, defendant's subjective knowledge of the relevant facts does not trigger the first thirty-day period for removal. Id. Moreover, a defendant has no duty to investigate and to ascertain removability grounds even if the complaint contains "clues" to removability. Id. at 696-97; see also Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013) ("Removals invoking CAFA jurisdiction are equally subject to this rule."). This bright-line rule serves important jurisdictional and procedural purposes: it brings certainty and predictability in the removal process and prevents secondary "litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." Harris, 425 F.3d at 697.

If the initial pleading does not disclose facts supporting removal, the second thirty-day period is triggered when defendant receives "a copy of an amended pleading, motion, order or other paper" from which removability grounds may first be ascertained. 28 U.S.C. § 1446(b)(3).

These two periods act "as limitations on the right to remove," yet they "do not otherwise affect the time during which a defendant may remove." Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1123 (9th Cir. 2013) (emphasis omitted). That is, "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal . . . may remove to federal court when it discovers, based on its own investigation, that a case is removable." Id.

1.   Relevant Facts

The crux of the present dispute is whether the second thirty day period was triggered by a May 14, 2014 e-mail from Plaintiffs to Defendants in which Plaintiffs

confirmed that they sought to represent all employees of CVS and its subsidiaries, as stated in the complaint. Defendants argue that the complaint was unclear and, though not specifically so limited, it was reasonably interpreted as purporting to bring claims only on behalf of Plaintiff's fellow CVS distribution center employees. (Not. Of Removal, ECF No. 1 at 8-9; Lam Decl., ECF No. 1-2 at ¶¶ 27-28.)

According to the complaint, Plaintiffs sought to recover unpaid vacation wages, unpaid final wages, and late final wages for classes consisting of "All persons who worked for CVS Caremark in the state of California, whose employment with CVS Caremark ended at any time since the date three[3] years prior to the filing of this complaint" and who accrued benefits from CVS Caremark. (Lam Decl., Ex. 3, at ¶ 11.) The complaint defined Defendants CVS Pharmacy, Inc. and Caremark Rx, LLC collectively as "CVS Caremark" and used that name throughout the class definition. The complaint states that Plaintiff Reyes worked for Defendants in Patterson, California, but says nothing about whether he worked at a distribution center. (Id. at ¶ 4.) Defendants, however, became aware of Reyes employment in the distribution center through their own investigation and discovery. (See Decl. of Belva Biaglas, E.D. Cal. Case No. 1:13-cv-00420-AWI-GSA, ECF No. 1-3.)[4]

However, on May 14, 2014, Plaintiffs' counsel sent defense counsel an e-mail questioning Defendants limiting discovery responses to distribution center employees. Defendants refer to this e-mail as the "other paper" that led them to discover that the class consisted of more than the distribution center employees. Its relevant portions read as follows:

> I have taken a look at defendant's discovery responses and there are several issues we need to discuss.
>
> First, the interrogatory responses state that plaintiff was not

---

[3] Or four years, depending on the claim.

[4] A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Accordingly, the Court takes judicial notice of documents filed in the prior removal proceeding.

employed by either CVS Pharmacy, Inc. or CVS Caremark Corporation (the name of the entity you told us should have been named instead of Caremark RX LLC, who was named in the complaint). So, we would appreciate you telling us the name of the entity you contend was the employer of plaintiff, and what the relationship is between that entity and CVS.

…

Third, the class defined in the complaint is not limited to persons employed at a distribution center. While we may be willing to narrow the class if defendants agree to mediate with respect to all distribution center employees, at this point there is no evidence to suggest that how defendants calculated the amount of accrued vacation owed on termination to employees who worked at distribution centers differs from the manner of calculation for employees who worked at other CVS locations. Unless you provide us with evidence to substantiate that there is a difference, we have no reason to limit the class and we are entitled to much more information than provided in response to plaintiff's interrogatories.

(Lam Decl. Ex. 33, ECF No. 1-4 at ¶¶ 47-49.)

2.   Analysis

Plaintiffs assert that the plain language of the complaint defines the class as "all persons who worked for CVS Caremark in the state of California" and does not limit the classes to employees working at distribution centers or include any other job classification limitations. (ECF No. 6 at 4.) Defendants respond that since Plaintiffs were seeking to represent "similarly situated persons" they "justifiably understood" that Plaintiff only sought to represent distribution center employees such as Reyes. (Opp'n at 2.) Defendants argue that the allegations of the complaint were "susceptible to more than one interpretation," and it was not facially apparent from it that Plaintiffs sought to represent all California employees. (Id. at 11.)

Plaintiffs have the better position in this argument. Clearly, nothing in the complaint limits the class to distribution center employees. The fact that Reyes was employed at a distribution center does not in and of itself limit the scope of potential class members to only those employees. Moreover, nothing before the Court suggests that the alleged wage violations asserted in the complaint vary depending upon the particular job employees held.  The complaint clearly defines the class as all "all persons who worked for CVS Caremark in the state of California," and it was unreasonable for Defendants to read beyond the plain meaning of the complaint to further limit the scope

1  of the class. Defendants' interpretation limiting the scope of potential class was not
2  reasonable.

3  Defendants also contend that they were not put on notice of the full extent of the
4  size of the class because Plaintiffs erroneously named "Caremark RX L.L.C.," rather
5  than "CVS Caremark Corporation." However, Defendants have throughout this litigation
6  noted that "CVS Caremark Corporation" was erroneously named as "Caremark RX
7  L.L.C."  Nothing in the May 14, 2014 e-mail provided Defendants with more clarity on
8  this point. Based on the above, the Court cannot, and does not, find that the May 14,
9  2014 e-mail revealed previously unknown details regarding the potential class sufficient
10 to trigger anew the time for removal.

11 However, Plaintiff's victory in the foregoing battle does not determine the victor in
12 the larger removal war.

13 While Defendants' interpretation of the complaint is unreasonable, it is also
14 without question that both the complaint and the May 14, 2014 e-mail are
15 "indeterminate." Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir.
16 2013) ("[A] defendant does not have a duty of inquiry if the initial pleading or other
17 document is "indeterminate" with respect to removability. Thus, even if a defendant could
18 have discovered grounds for removability through investigation, it does not lose the right
19 to remove because it did not conduct such an investigation and then file a notice of
20 removal within thirty days of receiving the indeterminate document.") Neither the
21 complaint nor the e-mail expressly provide the number of potential class members or the
22 amount of damages at issue. As such, they are "indeterminate" and neither thirty day
23 removal period discussed under 28 U.S.C. § 1446(b) has commenced in this case.

24 The question at issue therefore becomes whether Defendants' removal, despite
25 not being filed within one of the thirty day periods, is nevertheless timely. In Roth, the
26 Ninth Circuit answered in the affirmative:

27  We conclude that §§ 1441 and 1446, read together, permit a
   defendant to remove outside the two thirty-day periods on the basis of its
28 own information, provided that it has not run afoul of either of the thirty-day

deadlines. For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability by a plaintiff. A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so. But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own. Similarly, a plaintiff's ignorance of the citizenship of would be class members should not defeat removal if defendant independently knows or learns that information.

Roth, 720 F.3d 1121, 1124 (9th Cir. 2013). Here, it is without argument that Defendants had to conduct research to determine both the number of potential class members and the amount in controversy. (See Not. Of Removal at 4-6; O'ppn at 4-6; Decl. Kristen Rourke, ECF No. 1-5.) Kristen Rourke, a Senior Paralegal for Defendants, contacted Defendants' third party payroll vendor to determine the number of potential employees in the class. On June 18, 2014, she received a spreadsheet containing the data from the vendor, and provided the information to counsel the same day. (Rourke Decl.) Based on the information regarding the size of the proposed class from Rourke, counsel extrapolated the amount in controversy based on the claimed labor violations. (Not. Of Removal at 4-6.) None of the information obtained during the investigation was expressly provided to Defendants by way of Plaintiffs complaint or May 14, 2014 e-mail.

This second attempt, a year and a half after litigation commenced, to remove the case could be seen as gamesmanship. However, the Ninth Circuit, aware of such a potential, provided guidance to Plaintiffs in CAFA matters to prevent Defendants from removing after significant litigation had occurred:

> We discern one practical objection to our reading of §§ 1441 and 1446(b). It may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the "initial pleading" nor any later document received from plaintiff triggers one of the two thirty-day periods. In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so. In a non-CAFA diversity case, the advantage gained through such gamesmanship is limited by the fact that a notice of removal must be filed, in any event, within one year of the commencement of the action. See 28 U.S.C. § 1446(c)(1). However, in a CAFA case, there is no such time limit. A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered. See 28 U.S.C. 1453(b).
>
> It is thus at least theoretically possible in a CAFA case for a

> defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal. That is not what happened in the case before us. Defendants promptly investigated to determine whether the case was removable. Then, upon learning that it was removable, they promptly filed a notice of removal. But the theoretical possibility of abusive gamesmanship remains.
>
> Our best answer — and a likely sufficient answer — is that plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained. 28 U.S.C. § 1446(b)(3). Such a document will trigger the thirty-day removal period, during which defendant must either file a notice of removal or lose the right to remove.

Roth, 720 F.3d at 1126.

Plaintiffs have not heeded this advice in this case. The did not expressly state that the number of proposed class members exceeded 100 and the amount in controversy exceeded $5,000,000 in the complaint, in the May 14, 2014 e-mail, or, apparently, anywhere else before May 14, 2014.  Plaintiffs submit no evidence that they provided documents to Defendants which made removability apparent without further investigation. See Harris v. Bankers Life & Cas. Co., 425 F.3d at 694 (removability must be evident from the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

Accordingly, the Court finds that Defendants' removal is timely. Roth, 720 F.3d at 1124.

**C.     Evidence To Establish Diversity Requirements Under CAFA**

Because the Court has determined that Defendants timely removed this action, the Court must determine whehter Defendants have established minimum jurisdiction under CAFA. The preponderance of the evidence standard applies for review of jurisdiction under CAFA. See Rodriguez v. AT&T Mobility Services, LLC, 728 F.3d 975 (9th Cir. 2013); Rea v. Michaels Stores Inc., 742 F.3d 1234, 1239 (9th Cir. 2014).

With regard to the number of proposed class members, Defendants' counsel received a spreadsheet prepared by paralegal Kristen Rourke and a third party payroll vendor containing the names of all employees of CVS in the state of California who were

1 terminated between January 30, 2010 and May 17, 2014; whether the employees were
2 exempt or non-exempt under the Fair Labor Standards Act; the respective rate of pay at
3 termination; and whether they were full or part time. (Lam Decl. ¶¶ 30-32.) From that
4 information, counsel determined that the number of full-time, hourly, non-exempt
5 employees terminated during the period as 11,173. (Id.) Of those employees, counsel
6 determined that 10,704 were terminated prior to the end of a given month. (Id.) These
7 employees may be entitled to vacation benefits that accrued during the month of
8 termination.

In the complaint, Plaintiffs defined the proposed class as employees who accrued vacation benefits during their employment with Defendants and whose employment terminated within four years of the filing of the lawsuit. (See Compl., ¶ 11.) Based on the information provided Defendants, the Court finds that they have established by a preponderance of the evidence that there are likely thousands of proposed class members – well more than the jurisdictional minimum of more than 100.

Based on the number of potential class members, Defendants calculated that the 10,704 full time, non-exempt employees terminated prior to the end of the month may each be entitled to the maximum amount of 30 days of wages as waiting time penalties. (Not. Of Removal at 5-6.) Based on the minimum hours Defendants required employees to work to be considered full time (six hours per day) and the minimum wage during the relevant time ($8.00 per hour), Defendants calculated that the proposed class of Plaintiffs could be entitled to $15,413,760.00 in waiting time penalties under Cal. Labor Code § 203. (Id.) Defendants note that the estimate is based on "extremely conservative estimates and assumptions." (Id.)

Plaintiffs did not contest that the jurisdictional minimums were met.

The Court finds that Defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 based on a conservative estimate of only one labor code violation. The complaint states several other causes of action.

### D.   Plaintiffs' Request for Attorneys' Fees

11

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs request an award of attorneys' fees and costs incurred as a result of Defendants' allegedly improper removal. Because the Court finds removal appropriate and timely and denies the motion to remand, it denies Plaintiff's request for attorneys' fees.

**IV.     <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 6) is DENIED. Defendants' motion to file a sur-reply is DENIED. (ECF No. 19) The Court shall issue a separate order regarding further scheduling.

IT IS SO ORDERED.

Dated:   August 8, 2014               /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE