1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**FRANCISCO NIEVES REYES,**

Plaintiff,

v.

**CVS PHARMACY, INC., et al.,**

Defendants.

1:14-cv-00964-MJS

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**[Doc. 35]**

Final Fairness Hearing: June 10, 2016 at 9:30 a.m. in Courtroom 6 (MJS)

On October 30, 2015, Plaintiff Francisco Nieves Reyes, on behalf of himself and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a motion for preliminary approval of a class action settlement. (ECF No. 35.) On November 23, 2015, Defendants CVS Pharmacy, Inc. and Caremark Rx, LLC (hereinafter collectively referred to as "Defendants") filed a statement of non-opposition. (ECF No. 37.)

Plaintiffs' motion was heard on December 11, 2015. Counsel Gregory Karasik appeared on behalf of Plaintiffs, and counsel Jennifer Zargarof appeared telephonically

1

1   on behalf of Defendants.

2       At the hearing, the Court requested further briefing from the parties. (ECF No. 38.)

3   Plaintiffs filed supplemental briefing to the Court on January 7, 2016. (ECF No. 39.) The

4   matter is deemed submitted and stands ready for adjudication.

5   **I.    BACKGROUND**

6       The operative complaint in this action was filed in Stanislaus County Superior

7   Court on January 30, 2013. (ECF No. 1) The action initially was removed to federal court

8   on March 21, 2013 on grounds of federal question jurisdiction, but remanded on

9   February 12, 2014. (Case No. 13-cv-00420-AWI-GSA, ECF Nos. 1 & 19.) The case

10  again was removed to federal court on June 19, 2014, this time on grounds of diversity

11  jurisdiction under the Class Action Fairness Act ("CAFA"). (ECF No. 1.) Plaintiff's motion

12  for remand (ECF No. 5) was denied on August 11, 2014 (ECF No. 22).

13      **A.    The Complaint[1]**

14      Plaintiff asserts claims for violations of the California Labor Code, including failure

15  to pay vacation wages owed upon termination, failure to pay all wages owed upon

16  termination, and failure to pay final wages timely upon termination; and unfair

17  competition under the California Business and Professions Code. These claims arise

18  from Plaintiff's allegations that Defendants (1) calculate the amount of employees'

19  accrued vacation on a monthly basis and (2) do not pay accrued but unused holiday pay

20  timely upon termination.

21      Named Plaintiff Francisco Nieves Reyes alleges the following facts: He worked

22  for Defendants in Patterson, California from April 2008 to August 20, 2012. During that

23  time, he earned vacation benefits on a daily basis, at a rate of 6.67 hours per month.

24  Because Defendants only recorded Mr. Reyes's vacation hours as accrued or earned on

25  a monthly basis, they did not pay Plaintiff for vacation hours earned during his final,

26  partial-month pay period of August 4, 2012 to August 20, 2012. Additionally, Mr. Reyes

27

28

---

[1] The operative complaint is discussed herein. The settlement agreement requires filing of a proposed first amended complaint. The allegations of the proposed complaint are discussed below.

1    earned one personal "floating" holiday per year. Mr. Reyes did not use his floating

2    holiday during his last year of employment, and therefore was due eight hours of pay

3    upon his termination. Despite being discharged on August 20, 2012, he was not paid for

4    the floating holiday until September 4, 2012.

5        Mr. Reyes seeks to represent similarly situated individuals through a class action

6    made up of: the unpaid vacation wages class (including all of Defendants' California

7    employees who earned vacation and whose employment ended within the four years

8    preceding filing of the complaint); the unpaid final wages class (including all of

9    Defendants' California employees who earned vacation and whose employment ended

10   within the three years preceding filing of the complaint); and the late final wages class

11   (including all of Defendants' California employees who did not use all floating holidays

12   accrued, and whose employment ended within the three years preceding filing of the

13   complaint).

14          **B.     Proposed Amended Complaint**

15        The parties' settlement agreement requires the filing of a first amended complaint.

16   The proposed complaint differs from the operative complaint in several important

17   respects. First, it defines the class as "[a]ll persons who worked for CVS at the La Habra

18   or Patterson Distribution Centers in the state of California, who were subject to collective

19   bargaining agreements (but not including the La Habra Warehouse Agreement)," whose

20   employment with CVS ended at any time since January 30, 2009 (for the unpaid

21   vacation wages and late final wages classes) or January 30, 2010 (for the unpaid final

22   wages class), who accrued vacation benefits and/or did not use all accrued floating

23   holiday benefits during their employment with CVS. (ECF No. 35-4 at 32.) The Class

24   continues to be made up of the unpaid vacation wages class, the unpaid final wages

25   class, and the late final wages class. The complaint also brings a claim for civil penalties

26   under the California Labor Code Private Attorney General Act of 2004 ("PAGA") on

27   behalf of "Aggrieved Employees."

28        The proposed complaint also includes a new allegation that Defendants have a

policy requiring unused floating holiday pay to be forfeited upon termination. The several causes of action have been reworded slightly to incorporate claims arising out of this new allegation. For example, the cause of action for forfeiture of vacation alleges that members of the unpaid vacation wages class were entitled to, but did not receive, all of their earned but unused vacation, including floating holiday benefits. The cause of action for failure to pay all wages owed upon termination similarly includes a claim by the unpaid final wages class for penalty wages resulting from the policy requiring forfeiture of unused floating holiday benefits upon termination.

**C.      Proposed Settlement Agreement**

Under the terms of the proposed settlement agreement, Defendants agree to pay $400,000 ("total maximum potential settlement") to resolve the claims of any participating class members. Participating class members are defined as those who do not submit timely and valid requests for exclusion. Class members are not required to submit claim forms.

The parties propose the following deductions from the total maximum potential settlement:

- $1,000 to the Labor Workforce Development Agency in relation to Plaintiffs' PAGA claim;

- Up to $5,000 to named Plaintiff Mr. Reyes as an incentive award for his services and participation as class representative;

- Up to $100,000 (25 percent of the total maximum potential settlement) to class counsel for attorney fees;

- Up to $10,000.00 in legal costs and expenses; and

- Approximately $6,500 in claims administration costs.

The remaining funds shall constitute a "gross settlement fund" of approximately $277,500. The gross settlement fund shall be divided equally among participating class members, and shall be used to pay the Settlement Award to all participating class members and Defendants' share of payroll taxes associated therewith. Ninety percent of

4

1   the Settlement Award will be allocated to penalties and interest. Ten percent of the

2   Settlement Award will be allocated to wages. Defendants make no representations

3   regarding the participating class members' tax liability associated with the settlement.

4   Unclaimed settlement checks shall escheat to the State of California's Bureau of

5   Unclaimed Property.

6   **II.      LEGAL STANDARD**

7           The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of

8   class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The

9   settlement of a certified class action must be fair, adequate, and reasonable. Fed. R.

10  Civ. P. 23(e)(2). But, where the "parties reach a settlement agreement prior to class

11  certification, courts must peruse the proposed compromise to ratify both the propriety of

12  the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938,

13  952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard

14  of fairness and a more probing inquiry than may normally be required under Rule 23(e)."

15  Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation

16  marks omitted).

17  **III.     CLASS CERTIFICATION**

18          For the purposes of the proposed settlement, the parties ask the Court to

19  provisionally certify the class.

20          To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule

21  23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil

22  Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th

23  Cir. 2013). When determining whether to certify a class for settlement purposes, a court

24  must pay "heightened" attention to the requirements of Rule 23. Amchem Prods., Inc. v.

25  Windsor, 521 U.S. 591, 620 (1997); Narouz v. Charter Commc'ns., LLC, 591 F.3d 1261,

26  1266 (9th Cir. 2010). Indeed, "[s]uch attention is of vital importance, for a court asked to

27  certify a settlement class will lack the opportunity, present when a case is litigated, to

28  adjust the class, informed by the proceedings as they unfold." Amchem Prods., Inc., 521

1    U.S. at 620.

2        In order to depart from the usual rule that litigation is conducted by individually

3    named parties, "a class representative must be part of the class and 'possess the same

4    interest and suffer the same injury' as the class members." Wal-Mart Stores, Inc. v.

5    Dukes (Wal-Mart), 131 S.Ct. 2541, 2550 (2011) (citation omitted). Rule 23(a) provides

6    that the named plaintiffs are appropriate representatives where: "(1) the class is so

7    numerous that joinder of all members is impracticable; (2) there are questions of law or

8    fact common to the class; (3) the claims or defenses of the representative parties are

9    typical of the claims or defenses of the class; and (4) the representative parties will fairly

10   and adequately protect the interests of the class." These requirements ensure that the

11   class claims are limited to those fairly encompassed by the named plaintiff's claims. Wal-

12   Mart, 131 S.Ct. at 2550.

13       Additionally, Plaintiffs seek certification of a class under Federal Rule of Civil

14   Procedure 23(b)(3), which requires that questions of law or fact common to class

15   members predominate over any questions affecting only individual members, and that a

16   class action is superior to other available methods for fairly and efficiently adjudicating

17   the controversy.

18       Finally, it is noted:

19           Rule 23 does not set forth a mere pleading standard. A party
         seeking class certification must affirmatively demonstrate his compliance
20       with the Rule – that is, he must be prepared to prove that there are *in fact*
         sufficiently numerous parties, common questions of law or fact, etc. We
21       recognized in [Gen. Tel. Co. of SW v. Falcon, 457 U.S. 147 (1982)] that
         "sometimes it may be necessary for the court to probe behind the
22       pleadings before coming to rest on the certification question," and that
         certification is proper only if "the trial court is satisfied, after a rigorous
23       analysis, that the prerequisites of Rule 23(a) have been satisfied."

24   Wal-Mart, 131 S. Ct. at 2551 (citations omitted) (emphasis in original).

25       **A.    Numerosity**

26       The numerosity requirement is satisfied where "the class is so numerous that

27   joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Factors relevant to this

28   requirement include: (1) the number of individual class members; (2) the ease of

1   identifying and contacting class members; (3) the geographical spread of class

2   members; and (4) the ability and willingness of individual members to bring claims, as

3   affected by their financial resources, the size of the claims, and their fear of retaliation in

4   light of an ongoing relationship with the defendant. See, e.g., Twegbe v. Pharmaca

5   Integrative Pharm., Inc., 2013 U.S. Dist. LEXIS 100067, 2013 WL 3802807 (N.D. Cal.

6   July 17, 2013), and sources cited therein.

7       Plaintiffs' motion states that the settlement class is comprised of approximately

8   400 employees. Plaintiff's counsel avers that this number was derived from information

9   received informally through Defendants, and is consistent with deposition testimony and

10  documents obtained through discovery. (ECF No. 39-1.) The Court has no reason to

11  doubt counsel's estimate of the class size.

12      As described by Plaintiff, the class is large and readily identifiable through

13  Defendants. The value of the individual claims makes individual actions unlikely and

14  inefficient. At this stage of the proceedings, the Court will accept Plaintiff's estimation as

15  sufficient for provisional class certification. However, Plaintiffs must be prepared to

16  substantiate the number of class members at the final approval stage. **B.**

17      **Commonality**

18      The commonality requirement is satisfied when a plaintiff shows that "there are

19  questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs' claims

20  must depend upon a common contention that it is capable of classwide resolution –

21  "which means that determination of its truth or falsity will resolve an issue that is central

22  to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551.

23      Common questions abound in this action. Did Defendants record vacation time on

24  a monthly basis? Did they, as a result, fail to pay class members all earned vacation time

25  upon termination? Did Defendants fail to pay class members all wages owed upon

26  termination? Answers to these common questions will substantially drive the litigation

27  and resolve issues central to the validity of several of Plaintiffs' claims. See Wal-Mart,

28  131 S. Ct. at 2551.

There is, however, one area in which class members do not appear to be uniformly situated: the forfeiture of unused floating holiday pay. Plaintiff alleges that Defendants had a policy requiring forfeiture of unused floating holidays upon termination. However, this policy apparently was not applied uniformly to all class members. Plaintiff Reyes, for example, <u>was</u> paid his floating holiday pay, although belatedly. Thus, it appears the class may contain members who were not paid floating holiday pay at all, those who were paid late, and even those who used all of the floating holiday pay they earned and thus are owed nothing. Therefore, asking whether Defendants have a policy requiring forfeiture of holiday pay, standing alone, will not resolve Plaintiffs' claims.

Nevertheless, Rule 23(a)(2) is to be construed permissively. <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Id.</u> Here, class members share common legal issue of unpaid vacation wages, unpaid final wages, and late final wages. Unpaid floating holidays are but one factual predicate upon which these claims rest. The Court concludes that this factual variation is insufficient to defeat commonality.

Accordingly, the Court concludes the commonality requirement is satisfied.

### C.     Typicality

Typicality ensures that Plaintiff Reyes is the proper party to proceed with the suit. The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020.

With the exception of claims concerning forfeited floating holiday wages, the

1   claims of Mr. Reyes are substantially identical to those of the other class members. The

2   claims for late and/or forfeited floating holiday pay are reasonably co-extensive. These

3   claims involve similar legal issues and only minor factual variations.

4          Accordingly, the typicality requirement is satisfied.

5          **D.     Adequacy of Representation**

6          A plaintiff may bring claims on behalf of a class only if he "will fairly and

7   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two

8   questions determines legal adequacy: (1) do the named plaintiffs and their counsel have

9   any conflicts of interest with other class members, and (2) will the named plaintiffs and

10  their counsel prosecute the action vigorously on behalf of the class?" <u>Hanlon</u>, 150 F.3d

11  at 1020 (citation omitted).

12         The Court has no reason to believe there is a conflict of interest between Plaintiff

13  or his counsel and other class members. Given the similarity between Plaintiff's claims

14  and those of the absent class members, Plaintiff and his counsel are likely to vigorously

15  prosecute this action on behalf of the class. Accordingly, the Court concludes that

16  Plaintiff is an adequate class representative.

17         **E.     Rule 23(b)(3)**

18         This provision requires the Court to find that: (1) "the questions of law or fact

19  common to class members predominate over any questions affecting only individual

20  members," and (2) "a class action is superior to other available methods for fairly and

21  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

22         Common legal questions predominate with respect to Plaintiff's claims. Minor

23  factual variations in the amounts owed to each Plaintiff do not predominate over these

24  common legal questions. A class action is clearly superior to and more efficient than the

25  adjudication of 400 individual wage and hour claims.

26         Accordingly, the requirements of Rule 23(b)(3) are met.

27         **F.     Conclusion**

28         Based on the foregoing, the Court concludes that the requirements of Rule 23(a)

and (b)(3) are met. Accordingly, the Court will provisionally certify the class for settlement purposes.

## III.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

### A.    Legal Standard

In the settlement context, district courts have a fiduciary duty to look after the interests of absent class members. Allen v. Bedolla, 787 F.3d 1218, 1223 (2015); see also Hanlon, 150 F.3d at 1026; Staton, 327 F.3d at 972 n.22 (9th Cir. 2003) (it is the district court's duty to police "the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees."). To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011). A settlement agreement negotiated prior to formal class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Allen, 787 F.3d at 1224 (quoting In re Bluetooth, 654 F.3d at 946).

Review of the proposed settlement generally proceeds in two phases. True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, such as we now face in the instant case, the Court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. Id. at 1063. To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." Id. at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

### B. Settlement Negotiations

The parties engaged in discovery, including depositions, and thereafter proceeded to mediation with an experienced mediator. Plaintiff states that the parties engaged in prolonged negotiation over settlement details. The Court has no reason to conclude that the settlement agreement is anything other than the product of "serious, informed, non-collusive negotiations." In re Tableware Antitrust Litigation, 484 F. Supp. 2d at 1079.

### C. Plaintiff's Expected Recovery

Plaintiffs' counsel estimates that Defendants face a maximum liability of $1,000,000. The total maximum potential settlement of $400,000 represents 40% of this estimated liability. Plaintiff's counsel opines that the $400,000 settlement is an extremely good result in light of the risks and potential difficulties Plaintiffs would face in proceeding with this action.

Plaintiff's counsel explains that his estimate of Defendants' maximum potential liability is based entirely on forfeited floating holiday pay and waiting time penalties associated with delayed payment or total non-payment of such pay. Plaintiff relied on Defendants' approximation of the number of class members who were not timely paid floating holidays upon termination. He then calculated a day's pay at the class's average hourly wage rate, multiplied this by the affected number of class members, and concluded that Defendants faced liability of approximately $40,000 for unpaid floating holiday pay. He then multiplied this number by 30 (the maximum number of days for

1  waiting time penalties) to conclude Defendants faced waiting time liability of
2  approximately $1,000,000.

3      The Court notes that Plaintiff's calculations are mathematically imprecise. Thirty
4  days of waiting time penalties on $40,000 in wages would be $1,200,000. If Defendants'
5  potential liability is $1,240,000 (waiting time penalties plus wages owed), then a
6  $400,000 settlement represents only a 32% recovery, not the 40% recovery espoused
7  by Plaintiffs. Nevertheless, this level of recovery does not appear to be outside the range
8  of possible approval, given that Defendants apparently did not keep accurate records
9  regarding these violations, and some class members, such as Mr. Reyes, are owed
10 waiting time penalties for fewer than thirty days. See Officer for Justice v. Civil Serv.
11 Comm'n, 688 F.2d 615, 625 (9th Cir. 1982) (noting that class action settlements amount
12 to "nothing more than 'an amalgam of delicate balancing, gross approximations, and
13 rough justice'").

14     The Court concludes that the $400,000 maximum potential settlement is within
15 the range of possible approval. However, given the lack of definite information
16 concerning class size, wage rates, and violation rates, the Court will carefully scrutinize
17 the fairness of the settlement value at the final fairness hearing. The parties should be
18 prepared to substantiate the fairness of the settlement with concrete information that
19 allows the Court to meaningfully evaluate whether the settlement is fair, reasonable, and
20 adequate.

21     **D.    Preferential Treatment**

22     It is apparent that there are variations in the potential damages owed to each
23 class member. Class members were paid at different wage rates. Some may have
24 received floating holiday pay upon termination, some may have received it belatedly,
25 others not at all, and still others may have used their floating holiday and therefore have
26 no entitlement to such wages or any associated penalties. Despite these differences, the
27 settlement fund is to be divided equally among participating class members.

28     Despite the variations in actual damages, the Court has no information to suggest

1    that the equal division of the settlement fund prefers any members of the settlement

2    class to such an extent as to render the agreement outside the range of possible

3    approval. Although some class members may receive more than their fair share of the

4    fund (as compared to their share of actual damages), this may be appropriate given the

5    difficulties Plaintiffs would face in prosecuting their individual claims. Thus, the Court

6    finds that the equal division of the settlement fund is sufficient to meet the standards for

7    preliminary approval. Counsel is advised, however, that the Court will careful scrutinize

8    any objections on this basis at the final approval stage.

9            **F.**      **Notice of and Exclusion from Class**

10        Due process requires that any class member bound by a class action settlement,

11    at a minimum, be afforded the opportunity "to remove himself from the class." <u>Ortiz v.</u>

12    <u>Fibreboard Corp.</u>, 527 U.S. 815, 848 (1999) (citation omitted). Thus, putative class

13    members must be given class notice in a manner "reasonably calculated, under all the

14    circumstances, to apprise interested parties of the pendency of the action and afford

15    them an opportunity to present their objections." <u>Mullane v. Cent. Hanover Bank & Trust</u>

16    <u>Co.</u>, 339 U.S. 306, 314 (1950). Actual notice is not required; rather the "best practicable

17    notice under the circumstances" must be provided. <u>Silber v. Mabon</u>, 18 F.3d 1449, 1454

18    (9th Cir. 1994).

19        Here, the settlement agreement obligates the claims administrator to send a

20    notice to each class member via first-class mail using a Database Report compiled by

21    Defendants and including the last known address of potential class members. The

22    administrator also will use the National Change of Address database for the mailings. If

23    the notice is returned, it will be sent to the forwarding address affixed thereto, if any. If no

24    forwarding address is provided, the claims administrator will attempt to locate the

25    potential class member using a single skip-trace, computer, or other search, and shall

26    re-mail the notice. If the notice still is not received, the intended recipient shall be

27    considered a settlement class member and bound by the terms of the settlement,

28    including the release provisions, and final judgment in this action. However, he or she

shall not receive a settlement award. The notice clearly outlines the procedures putative class members must follow to object to or opt-out of the settlement.

Given that Defendants are able to provide the names and last known addresses of the putative class members, the notice provisions appear reasonably calculated to apprise interested parties of the action. The notice clearly informs parties when and how they may present their objections. Accordingly, the notice provisions are sufficient to satisfy due process.

### G.   Attorney's Fees and Costs

Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be awarded pursuant to Rule 23(h).

#### 1.   Fees

The court "ha[s] an independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth, 654 F.3d at 941; see also Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328 (9th Cir. 1999) ("[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.").

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial." In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). As a result the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. Id.; Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 968 (9th Cir. 2009) ("[W]hen fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit requires district courts to look for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." Allen, 787 F.3d at 1224 (quoting Bluetooth, 654 F.3d at 947). Such signs include: "(1) when counsel receive a disproportionate distribution of the settlement; [and] (2) when

14

1    the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant

2    will not object to a certain fee request by class counsel)." Id. (quoting Bluetooth, 654

3    F.3d at 943).

4         The Ninth Circuit has approved two methods of determining attorneys' fees in

5    cases where, as here, the amount of the attorneys' fee award is taken from the common

6    fund set aside for the entire settlement: the "percentage of the fund" method and the

7    "lodestar" method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)

8    (citation omitted). The district court retains discretion in common fund cases to choose

9    either method. Id. Under either approach, "[r]easonableness is the goal, and mechanical

10   or formulaic application of either method, where it yields an unreasonable result, can be

11   an abuse of discretion." Fischel v. Equitable Life Assurance Soc'y of the U.S., 307 F.3d

12   997, 1007 (9th Cir. 2002).

13        In the Ninth Circuit, a 25 percent award is the "benchmark" amount of attorneys'

14   fees, but courts may adjust this figure upwards or downwards if the record shows

15   unusual circumstances justifying a departure. Id.; Bluetooth, 654 F.3d at 942 (quoting

16   Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

17   "Under the lodestar method, the court multiplies a reasonable number of hours by a

18   reasonable hourly rate." Fischel, 307 F.3d at 1007. The Ninth Circuit recommends that

19   district courts apply one method but cross-check the appropriateness of the amount by

20   employing the other, as well. See Bluetooth, 654 F.3d at 944.

21        Here, the settlement agreement essentially employs the benchmark method, in

22   that it caps attorney fees at $100,000, 25% of the common fund. Plaintiffs' counsel

23   states that he also will substantiate, at the time of final settlement approval, that his fee

24   request is reasonable under the lodestar approach. Although the settlement agreement

25   contains a "clear sailing" arrangement, class counsel does not otherwise appear to have

26   allowed self-interest to infect the negotiations. The amount earmarked for fees is not per

27   se unreasonable. Although the Court will closely scrutinize counsel's fee request upon

28   final settlement approval, the fees provision is within the range of possible approval.

1        **2.      Costs**

2              "There is no doubt that an attorney who has created a common fund for the

3       benefit of the class is entitled to reimbursement of reasonable litigation expenses from

4       that fund." <u>Ontiveros v. Zamora</u>, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citations omitted).

5       To that end, courts throughout the Ninth Circuit regularly award litigation costs and

6       expenses in wage-and-hour class actions. The settlement agreement provides that class

7       counsel may obtain up to $10,000 in costs. Although class counsel has yet to submit an

8       itemized bill of costs, the maximum award of costs is reasonably proportionate to the

9       amount of attorneys' fees when compared to similar settlements. <u>See, e.g.</u>, <u>Navarro v.</u>

10      <u>Servisair</u>, No. C 08-02716 MHP, 2010 U.S. Dist. LEXIS 41081, 2010 WL 1729538, at *3

11      (N.D. Cal. April 27, 2010) (awarding $11,000 in costs in conjunction with $180,000 in

12      attorneys' fees); <u>Odrick v. UnionBancal Corp.</u>, No. C 10-5565 SBA, 2012 U.S. Dist.

13      LEXIS 171413, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (awarding $20,000 in

14      costs in conjunction with $875,000 attorneys' fees); <u>Tarlecki v. bebe Stores, Inc.</u>, No.

15      CV-05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, 2009 WL 3720872, at *6 (N.D. Cal.

16      Nov. 3, 2009) (awarding $30,000 in costs in conjunction with $200,000 in attorneys'

17      fees). The Court therefore finds the agreement for cost reimbursement in an amount up

18      to $10,000 to be within the range of possible approval.

19        **H.      Administration Costs**

20              Courts regularly award administrative costs associated with providing notice to the

21      class. <u>See, e.g.</u>, <u>Odrick</u>, 2012 U.S. Dist. LEXIS 171413, 2012 WL 6019495, at *7. Here,

22      the settlement agreement provides for approximately $6,500 in administration costs to

23      be paid to the claims administrator. Although the settlement agreement does not cap

24      administration costs, the administrator's bid does cap costs at $6,500. Pursuant to the

25      settlement agreement, administration costs include all costs associated with providing

26      notice to the class, issuance of checks to class members, issuance of any applicable W-

27      2 and 1099 forms, and calculating Defendants' share of employee tax withholding.

28      Although the Court has some skepticism regarding the fairness of using the common

1   fund to pay the costs of calculating Defendants' tax liability, this amount appears to be

2   minimal. As a whole, the costs requested for claim administration, while subject to final

3   approval, appear reasonable.

4       **I.    Incentive Award**

5           The settlement agreement also provides for an incentive payment to named

6   Plaintiff Mr. Reyes, in an amount up to $5,000.

7           "Incentive awards are fairly typical in class action cases." Rodriguez v. West

8   Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted). However, the

9   decision to approve such an award is a matter within the court's discretion. See In re

10  Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking,

11  incentive awards are meant to "compensate class representatives for work done on

12  behalf of the class, to make up for financial or reputational risk undertaking in bringing

13  the action, and, sometimes, to recognize their willingness to act as a private attorney

14  general." Rodriguez, 563 F.3d at 958-59. The Ninth Circuit has emphasized that "district

15  courts must be vigilant in scrutinizing all incentive awards to determine whether they

16  destroy the adequacy of the class representatives. Radcliffe v. Experian Info. Solutions,

17  Inc., 715 F.3d 1157, 1165 (9th Cir. 2013). A class representative must justify an

18  incentive award through "evidence demonstrating the quality of plaintiff's representative

19  service," such as "substantial efforts taken as class representative to justify the

20  discrepancy between [his] award and those of the unnamed plaintiffs." Alberto v. GMRI,

21  Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008).

22          Plaintiffs request an incentive payment of up to $5,000 to Mr. Reyes. This award

23  is within the range that the Ninth Circuit has considered reasonable. See In re Online

24  DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015). However, it is 1.25

25  percent of the gross settlement funds, which is higher than what other courts have found

26  acceptable. See Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 U.S. Dist. LEXIS

27  69799, 2010 WL 2486346 (C.D. Cal. June 15, 2010) (C.D. Cal. June 15, 2010)

28  (collecting cases and concluding that plaintiff's request for an incentive award

1    representing one percent of the settlement fund was reasonable).

2         Under the settlement agreement, the Court retains discretion to award an amount

3    less than $5,000 to Mr. Reyes as an incentive payment, without voiding the settlement

4    agreement. At this preliminary stage of the proceedings, and absent any information

5    regarding Mr. Reyes's efforts as class representative, the Court finds that the agreement

6    for an incentive award up to $5,000 is within the range of possible approval.

7         **J.    Conclusion**

8         The Settlement Agreement is within the range of possible approval and Plaintiff's

9    motion for preliminary approval of class action settlement will be granted

10   **IV.   CONCLUSION**

11        Based on the foregoing, it is HEREBY ORDERED that:

12        1. Plaintiff's motion for preliminary approval of class action settlement (ECF No.

13           35) is GRANTED;

14        2. The Court preliminarily certifies for settlement purposes, for treatment as a

15           class action under Rule 23 of the Federal Rules of Civil Procedure, a

16           settlement class defined as all persons whose employment at CVS's La

17           Habra, California or Patterson, California Distribution Centers ended any time

18           between January 30, 2009 and October 31, 2015, and who were subject to a

19           collective bargaining agreement, not including the La Habra, California

20           Warehouse Agreements;

21        3. The Court grants preliminary approval of the Settlement and preliminarily finds

22           the terms of the Settlement to be fair, reasonable, and adequate under Rule

23           23(e) of the Federal Rules of Civil Procedure, including the amount of the

24           settlement fund; the amount of distributions to class members; the procedure

25           for giving notice to class members; the procedure for members of the

26           Settlement Class to opt out of the Settlement; the procedure for members of

27           the Settlement Class to object to the Settlement; and the maximum amounts

28           allocated to incentive payments, costs and attorney's fees;

4. The Court appoints Plaintiff Francisco Nieves Reyes as representative for the Settlement Class;

5. The Court appoints Gregory N. Karasik of Karasik Law Firm and Sahag Majarian II of the Law Offices of Sahag Majarian II as counsel for the Settlement Class;

6. The Court appoints Simpluris, Inc. as the Settlement Administrator;

7. The Court orders the Settlement Administrator to mail out the Class Notice to members of the Settlement Class in accordance with the Settlement;

8. The Court orders that, in accordance with the Settlement, the deadline for members of the Settlement Class to opt out from the Settlement or object to the Settlement shall be the date 30 days after the date the Settlement Administrator mails out the Class Notice;

9. The Court orders that a Final Approval Hearing is scheduled for 9:30 a.m. on June 10, 2016 in Courtroom 6;

10. The parties may submit further briefing concerning final approval on or before May 23, 2016; and

11. The Court orders that Plaintiff shall file, within 5 days after entry of the preliminary approval order, a First Amended Complaint in the form attached to the Settlement, and that CVS's answer to the original complaint shall be deemed its answer to the First Amended Complaint.

IT IS SO ORDERED.

Dated:   February 10, 2016          /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE

19